Gordon W. Renneisen (SBN 129794)
Harry G. Lewis (SBN 157705)
CORNERSTONE LAW GROUP
351 California Street, Suite 600
San Francisco, CA 94104
Telephone:  (415) 625-5025
Facsimile:   (415) 655-8236
grenneisen@cornerlaw.com
hlewis@cornerlaw.com

Attorneys for Plaintiffs and all others
similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| BRIDGET MAZZINI, PATRICIA J. PAWLAK, and JOESEPH ANDRIS on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>NORWEGIAN AIR SHUTTLE NAS,<br><br>        Defendant. | CASE NO.<br><br>CLASS ACTION COMPLAINT FOR BREACH OF CONTRACT<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.      This is a consumer class action asserting breach of contract claims.  The action is brought by and on behalf of California residents who had confirmed reservations on airplane flights with defendant NORWEGIAN AIR SHUTTLE NAS ("Norwegian Air").

2.      Norwegian Air incorporated into its contracts with its passengers Regulation No. 261/2004 of the European Parliament and European Council ("Regulation (EC) 261/2004" or "EC 261"); and contractually bound itself to provide care and compensation in accordance with EC 261 to passengers whose flights are delayed or cancelled.

3.      As incorporated into Norwegian Air's contracts, EC 261 requires Norwegian Air to pay not less than €600 to each passenger whose flight is cancelled, or is delayed by more than four hours; and to pay not less than €300 to each passenger whose flight is delayed by more than three, but less than four, hours.  In addition, as incorporated into Norwegian Air's contracts, EC 261 requires Norwegian Air to provide passengers with written notice of their rights to care and compensation at the time that a flight is cancelled or delayed.

4.      Norwegian Air has breached its contractual obligations to a class of California residents with reservations on flights that were cancelled or delayed by failing to provide them with the required written notice of their rights; and by failing to pay them the EC 261 compensation that it agreed to pay.

5.      Norwegian Air also has breached its contractual obligations to a class of California residents who had reservations to fly in the "premium" section of Norwegian Air flights that were cancelled; and who Norwegian Air ultimately placed on alternate flights not providing premium service. Under the terms of Norwegian Air's contacts, it was required to refund to such passengers all charges imposed for premium service.  Norwegian Air has failed to do so.

## JURISDICTION VENUE AND INTRADISTRICT ASSIGNMENT

6.      This Court has jurisdiction pursuant to 28 U.S.C § 1332(a)(2).  The matter in controversy exceeds the sum or value of $75,000 for the class. The dispute is between the

CLASS ACTION COMPLAINT

members of a class, each of whom is a citizen of a State, and defendant Norwegian Air, which is a citizen of a foreign state.

7.    Venue is proper pursuant to 28 U.S.C. § 139l. Plaintiff and class representative Bridget Mazzini resides in this judicial district; as does plaintiff and class representative Joseph Andris. Defendants are conducting business in the judicial district, and a substantial part of the events or omissions giving rise to the claims at issue occurred in this judicial district.

8.    Assignment to the San Francisco Division is proper pursuant to Civil Local Rules 3-2(c) and 3-2(d) because plaintiff and class representative Bridget Mazzini resides in Marin County; as does plaintiff and class representative Joseph Andris; and a substantial part of the events or omissions which give rise to the claims at issue occurred in San Francisco County, Marin County, and Alameda County.

## THE PARTIES

9.    Plaintiff Bridget Mazzini is, and at all relevant time was, a citizen of the State of California residing in Marin County, California. Plaintiff Mazzini had a confirmed reservation on a Norwegian Air flight from Oakland, California to Stockholm, Sweden; and the flight was delayed for more than three hours.

10.    Plaintiff Patricia J. Pawlak is, and at all relevant time was, a citizen of the State of California residing in Los Angeles County, California. Plaintiff Pawlak had a confirmed reservation on a Norwegian Air flight from Stockholm, Sweden to Los Angeles, California; and the flight was delayed for more than three hours·

11.    Plaintiff Joseph Andris is, and at all relevant time was, a citizen of the State of California residing in Marin County, California.  Plaintiff Andris had a confirmed reservation on a Norwegian Air flight from Barcelona, Spain to Oakland, California; and the flight was cancelled.

12.    Defendant Norwegian Air Shuttle NAS is a foreign corporation and is a citizen of a foreign state.  Norwegian Air has its principal place of business in Fornebu, Norway. Plaintiffs are informed and believe, and based thereon allege that, Norwegian Air is incorporated in Norway. Norwegian Air is registered to do business in the State of California.

At all relevant times, Norwegian Air has actively solicited and transacted business in the State of California and in this judicial district.

**NORWEGIAN AIR'S BUSINESS IN CALIFORNIA**

13.  Norwegian Air has been registered to do business in California since 2013.  At all relevant times Norwegian has been doing business in California:  selling tickets for air travel to California residents; and flying passengers back and forth between California and Europe.

14.  Norwegian Air operates flights departing from and arriving at the Oakland International Airport and the Los Angeles International Airport (collectively the "California Airports").

15.  Norwegian Air flights arrive in California after departing from the following locations in Europe (collectively the "European Airports"):  Barcelona, Spain; Copenhagen, Denmark; Gatwick Airport in London, United Kingdom; Oslo-Gardermoen Airport, Norway; Charles De Gaulle Airport in Paris, France; Fiumicino Airport in Rome, Italy; and Stockholm-Arlanda Airport, Sweden.   Similarly, Norwegian Air flights departing from the California Airports fly to the European Airports.

16.  Each passenger flying out of California on a Norwegian Air flight was scheduled to land at one of the European Airports.  This Complaint does not distinguish between passengers who flew (or were scheduled to fly) to one of the European Airports as a final destination and those who flew (or were scheduled to fly) to one of the European Airports before continuing on to some other location. Likewise, this Complaint does not distinguish between passengers who flew (or were scheduled to fly) directly from one of the European Airports to California and those who began their journeys elsewhere but flew (or were scheduled to fly) to one of the European Airports enroute to California.  All Norwegian Air passengers flying (or scheduled to fly) from California to one of the European Airports, or from one of the European Airports to California, at any time between March 14, 2015 and the date that a class is certified in this action are referred to herein as "California Passengers."

17.  At the time that each California Passenger purchased a ticket on a Norwegian Air flight, or a ticket was purchased on the passenger's behalf, Norwegian Air obtained the

CLASS ACTION COMPLAINT

passenger's name.  Norwegian Air also obtained at least the following additional information for each California Passenger and/or the person purchasing a ticket on the passenger's behalf: an email address and a telephone number including a California area code.

### NORWEGIAN AIR'S CONTRACTS INCORPORATE EC 261

18.     With respect to each of the California Passengers Norwegian Air entered into a binding and enforceable contact. Norwegian Air confirmed its promises and obligations to each of the California Passengers in one or more of the following contractual documents or in combinations thereof:  the General Conditions of Carriage; the Terms and Conditions; and the Customer Service Plan.

19.     Norwegian Air unilaterally drafted all versions of the General Conditions of Carriage, the Terms and Conditions, and the Customer Service Plan in effect during the relevant time period.  The California Passengers had no ability or opportunity to change the terms of any of these documents.

20.     Since at least March of 2015, Norwegian Air has maintained a Customer Service Plan applicable to "flights to, from and within the United States."

21.     A Copy of the Norwegian Air Terms and Conditions in effect in March of 2015 is attached hereto as Exhibit A.   The Customer Service Plan is set forth within the Terms and Conditions as Section 29; and in part states,

> **Assistance in the event of a cancellation or delay**
> Whilst we will always strive to ensure that all of our flights depart according to schedule, unfortunately due to the nature of the aviation industry, it is inevitable that delays may occur from time to time. In the event of a cancellation or delay, we will do our utmost to rebook passengers on the next available flight to their destination with Norwegian, and provide other accommodations to mitigate passenger inconveniences in accordance with Regulation (EC) 261/2004. Any compensation or associated costs incurred will be reimbursed in accordance with Regulation (EC) 261/2004.

22.     At all relevant times Norwegian Air has posted the Customer Service Plan on its website as a section of the Terms and Conditions and/or as a stand-alone document.  At all relevant times the Customer Service Plan has indicated that "in the event of cancellation or delay" care and compensation will be provided "in accordance with" or "in line with" EC 261.

23.     Further confirmation of Norwegian Air's incorporation of EC 261 into its contracts with the California Passengers is provided by Sections 24 and 25 of the Terms and Conditions.

24.     Section 24 of the Norwegian Air Terms and Conditions in effect in March of 2015 states in part, "If your flight is delayed, you will be entitled to assistance in accordance with EU Regulation 261/2004." As posted on Norwegian Air's website, it provided a hyperlink to EC 261.

25.     Section 25 of the Norwegian Air Terms and Conditions in effect in March of 2015 states in part, "If your flight is cancelled, you will be entitled to assistance in accordance with EU Regulation 261/2004." As posted on Norwegian Air's website, it provided a hyperlink to EC 261.

26.     From at least March of 2015 through at least April of 2016, Sections 24 and 25 of the Terms and Conditions indicated that passengers on delayed or cancelled flights would be entitled to care and compensation "in accordance with EU Regulation 261/2004." Throughout this period Norwegian Air posted the Terms and Conditions on its website.

27.     Plaintiffs are informed and believe and based thereon allege that (a) Norwegian Air ceased posting the Terms and Conditions on its website at some point after April of 2016; but (b) at all relevant times Norwegian Air has continued to include on its website representations that passengers on delayed or cancelled flights will be entitled to care and compensation "in accordance with" or "in line with" EC 261.

28.     Section 1 of the Norwegian Air Terms and Conditions in effect from at least March of 2015 through at least April of 2016 stated, "All passengers travelling on flights operated by Norwegian accept the airline's Terms and Conditions and General Conditions of Carriage for the duration of their journey."

29.     A Copy of the Norwegian Air General Conditions of Carriage currently in effect is attached hereto as Exhibit B.

30.     In Section 2.1.1 of the General Conditions of Carriage, Norwegian Air states that the "General Conditions of Carriage are our conditions of carriage to which reference is

CLASS ACTION COMPLAINT

made on our Tickets, electronic booking documentation or Website"; and that they are applicable to all passengers. This provision has been included in Norwegian Air's General Conditions of Carriage since at least October of 2015; and this provision has not been revised since October of 2015.

31.    Like the Terms and Conditions and the Customer Service Plan, the General Conditions of Carriage incorporate EC 261.

32.    Section 11.2.2 of the General Conditions of Carriage states, "If at any time after the Booking has been made, we cancel, re-route or delay your flight, we will provide assistance in accordance with Regulation (EC) 261/2004. For flights to or from the United States, we will also provide assistance in accordance with our Customer Service Plan where applicable."   This provision has been included in Norwegian Air's General Conditions of Carriage since at least October of 2015; and Norwegian Air has not made any substantive revisions to this provision since October of 2015.

33.    At all relevant times Norwegian has posted on its website the General Conditions of Carriage and a link to EC 261.

**OTHER PROVISIONS IN NORWEGIAN AIR'S CONTRACTS**

34.    The Customer Service Plan set forth within the Norwegian Air Terms and Conditions in effect in March of 2015 in part states, "Fees charged for optional services that were unavailable or not provided due to an over sale situation or flight cancelation will be refunded to the passenger."

35.    At all relevant times this provision or a substantively identical provision has been included in Norwegian Air's Customer Service Plan.

36.    At all relevant times Norwegian Air has been contractually obligated to refund any charges imposed for optional services that were not provided as a result of the cancellation of a flight.

**REGULATION (EC) 261/2004**

37.    A copy of Regulation (EC) 261/2004 is attached hereto as Exhibit C.

38.    EC 261 Article 5.1(c) in part requires that,

CLASS ACTION COMPLAINT

In case of cancellation of a flight, the passengers concerned shall … have the right to compensation by the operating air carrier in accordance with Article 7, unless: (i) they are informed of the cancellation at least two weeks before the scheduled time of departure; or (ii) they are informed of the cancellation between two weeks and seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than two hours before the scheduled time of departure and to reach their final destination less than four hours after the scheduled time of arrival; or (iii) they are informed of the cancellation less than seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival.

39.     EC 261 Article 5 further provides,

2. When passengers are informed of the cancellation, an explanation shall be given concerning possible alternative transport.

3. An operating air carrier shall not be obliged to pay compensation in accordance with Article 7, if it can prove that the cancellation is caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken.

4. The burden of proof concerning the questions as to whether and when the passenger has been informed of the cancellation of the flight shall rest with the operating air carrier.

40.     EC 261 Article 7 in turn provides,

1. Where reference is made to this Article, passengers shall receive compensation amounting to: (a) EUR 250 for all flights of 1 500 kilometres or less; (b) EUR 400 for all intra-Community flights of more than 1 500 kilometres, and for all other flights between 1 500 and 3 500 kilometres; (c) EUR 600 for all flights not falling under (a) or (b). In determining the distance, the basis shall be the last destination at which the denial of boarding or cancellation will delay the passenger's arrival after the scheduled time.

2. When passengers are offered re-routing to their final destination on an alternative flight pursuant to Article 8, the

arrival time of which does not exceed the scheduled arrival
time of the flight originally booked
(a) by two hours, in respect of all flights of 1 500 kilometres
or less; or
(b) by three hours, in respect of all intra-Community flights of
more than 1 500 kilometres and for all other flights
between 1 500 and 3 500 kilometres; or
(c) by four hours, in respect of all flights not falling under (a)
or (b),
the operating air carrier may reduce the compensation
provided for in paragraph 1 by 50 %.

3. The compensation referred to in paragraph 1 shall be
paid in cash, by electronic bank transfer, bank orders or bank
cheques or, with the signed agreement of the passenger, in
travel vouchers and/or other services.

4. The distances given in paragraphs 1 and 2 shall be
measured by the great circle route method.

41.     The distance from each the California Airports to each of the European Airports
exceeds 3,500 Kilometers.

42.     Pursuant to Regulation (EC) No 261/2004, as incorporated into Norwegian Air's
contracts, the right that passengers have to compensation under Article 7 is separate from any
other right to assert claims for damages.  (EC 261 Article 12.1 provides, "This Regulation shall
apply without prejudice to a passenger's rights to further compensation. The compensation
granted under this Regulation may be deducted from such compensation.")

43.     Pursuant to the holdings of the European Court of Justice, passengers on delayed
flights, as well passengers on cancelled flights, have a right to compensation under EC 261
Article 7.

44.     The holdings of the European Court of Justice discussed below were issued prior
to the time that Norwegian Air began entering into contracts with or regarding California
Passengers; and have been in effect at all relevant times.

45.     The European Court of Justice addressed EC 261 in the joined cases of *Sturgeon
v Condor Flugdienst GmbH* and *Bock v Air France* (Case Nos. C-402/07 and C-432/07,
Judgment of November 19, 2009) (collectively "*Sturgeon*").  It held, "Regulation No 261/2004
must be interpreted as meaning that passengers whose flights are delayed may be treated, for

the purposes of the application of the right to compensation, as passengers whose flights are cancelled." *Sturgeon* at ¶69. The European Court of Justice concluded that such passengers "may thus rely on the right to compensation laid down in Article 7 of the regulation where they suffer, on account of a flight delay, a loss of time equal to or in excess of three hours, that is, where they reach their final destination three hours or more after the arrival time originally scheduled." *Id*.

46.     This conclusion was confirmed by the European Court of Justice in the joined cases of *Nelson v Deutsche Lufthansa AG* and *TUI Travel plc et al v Civil Aviation Authority* (Case Nos. C-581/10 and C-629/10l, Judgment of October 23, 2012 (collectively "*Nelson*"). *Nelson* holds, "passengers whose flights are delayed by three hours or more cannot be treated differently from those receiving compensation ... whose flights are cancelled." *Nelson* at ¶¶37-38. *Nelson* further states, "A loss of time is suffered identically by all passengers whose flights are delayed and, consequently, it is possible to redress that loss by means of a standardised measure, without having to carry out any assessment of the individual situation of each passenger concerned." *Id*. at ¶52

47.     Under *Nelson* and *Sturgeon*, "air carriers are not obliged to pay compensation if they can prove that the cancellation or long delay is caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken, namely circumstances which are beyond the air carrier's actual control." *Nelson* at ¶39.

48.     But "a technical problem in an aircraft which leads to the cancellation or delay of a flight is not covered by the concept of 'extraordinary circumstances' within the meaning of [EC 261, Article 5.3], unless that problem stems from events which, by their nature or origin, are not inherent in the normal exercise of the activity of the air carrier concerned and are beyond its actual control." *Sturgeon* at ¶72.

49.     Under EC 261 as incorporated into Norwegian Air's contracts with the California Passengers, Norwegian Air was not only obligated to pay compensation to passengers on cancelled or delayed flights, it was also obligated to notify them of their rights –

CLASS ACTION COMPLAINT

and to provide such notice in writing at the time a Norwegian Air flight was cancelled or delayed.

50.　　Article 14.2 of EC 261 states, "An operating air carrier denying boarding or cancelling a flight shall provide each passenger affected with a written notice setting out the rules for compensation and assistance in line with this Regulation."  It further states that an operating air carrier "shall also provide each passenger affected by a delay of at least two hours with an equivalent notice."  Any written notice prepared and provided as required by Article 14.2 of EC 261 is referred to herein as an "Article 14 Notice."

51.　　Per Article 14.1 of EC 261, an Article 14 Notice should include "text stating [passengers'] rights, particularly with regard to compensation and assistance."

### ADDITIONAL FACTS REGARDING THE NAMED PLAINTIFFS

52.　　Plaintiff  Bridget Mazzini purchased a ticket for a Norwegian Air flight from Oakland, California to Stockholm, Sweden.

53.　　Plaintiff  Mazzini had a confirmed reservation on Norwegian Air Flight DY 7068.  Flight DY 7068 was scheduled to depart from Oakland on July 17, 2017 at 5:15 p.m.; and was scheduled to arrive in Stockholm on July 18, 2017 at 12:20 p.m.  Plaintiff  Mazzini timely presented herself for check in on Flight DY 7068.

54.　　On the day that Flight DY 7068 was scheduled to depart, Norwegian Air announced that the Flight would be delayed.  Flight DY 7068 did not depart from Oakland until approximately 10:00 p.m. on July 17, 2017.  Flight DY 7068 did not arrive in Stockholm until approximately 5:00 p.m. on July 18, 2017.  The actual arrival time exceeded the scheduled arrival time for Flight DY 7068 by approximately four hours and 20 minutes. In sum, with respect to Flight DY 7068, there was a delay in excess of three hours.  This delay was not the result of extraordinary circumstances

55.　　At no point during or after the delay of Flight DY 7068 did Norwegian Air email an Article 14 Notice to Plaintiff  Mazzini or otherwise provide her with a written notice setting out the rules for compensation and assistance in line with EC 261.

56.    Norwegian Air has never paid any compensation for the delay of Flight DY 7068 to Plaintiff Mazzini.

57.    Plaintiff Patricia J. Pawlak purchased a ticket for a Norwegian Air flight from Stockholm, Sweden to Los Angeles, California.

58.    Plaintiff Pawlak had a confirmed reservation on Norwegian Air Flight DY 7087. Flight DY 7087 was scheduled to depart from Stockholm on January 5, 2018 at 2:00 p.m.; and was scheduled to arrive in Los Angeles on January 5, 2018 at 4:00 p.m. Plaintiff Pawlak timely presented herself for check in on Flight DY 7087.

59.    On the day that Flight DY 7087 was scheduled to depart, Norwegian Air announced that the Flight would be delayed. The departure of Flight DY 7087 was delayed; and the actual arrival time exceeded the scheduled arrival time for Flight DY 7087 by at least three hours and 40 minutes. In sum, with respect to Flight DY 7087, there was a delay in excess of three hours. This delay was not the result of extraordinary circumstances.

60.    At no point during or after the delay of Flight DY 7087 did Norwegian Air email an Article 14 Notice to Plaintiff Pawlak or otherwise provide her with a written notice setting out the rules for compensation and assistance in line with EC 261.

61.    On January 10, 2018 Plaintiff Pawlak sent an email to Norwegian Air complaining about Flight DY 7087 and addressing, among other things, the fact that the flight from Stockholm to Los Angeles had been delayed.

62.    Norwegian Air responded to Plaintiff Pawlak's email on January 10, 2018. Norwegian Air acknowledged that Flight DY 7087, traveling from Stockholm to Los Angeles on January 5, 2018, was delayed by three hours and 43 minutes. But Norwegian Air did not offer to pay any compensation for this delay.

63.    Norwegian Air has never paid any compensation for the delay of Flight DY 7068 to Plaintiff Pawlak.

64.    Plaintiff Joseph Andris purchased two tickets, one for himself and one for his wife, for a Norwegian Air flight from Barcelona, Spain to Oakland, California. They paid an extra charge for "premium" service – including seating in the "premium cabin."

CLASS ACTION COMPLAINT

65.   Plaintiff Andris and his wife had confirmed reservations on Norwegian Air Flight DY 7075, scheduled to fly from Barcelona to Oakland on November 5, 2017. They timely presented themselves for check in on Flight DY 7075

66.   On the day that Flight DY 7075 was scheduled to depart, Norwegian Air cancelled the Flight. As a result of this cancellation, passengers with reservations on Flight DY 7075 experienced a delay of approximately 24 hours in getting from Barcelona to Oakland.

67.   After cancelling Flight DY 7075, Norwegian Air temporarily pulled the plane that had been scheduled to make the flight out of service.

68.   Norwegian Air ultimately placed the passengers with reservations on Flight DY 7075 on another airplane, one that Norwegian Air chartered from a different airline. This new plane did not have a premium cabin. Plaintiff Andris and his wife did not receive the premium service for which they had been charged.

69.   On November 11, 2018 Plaintiff Andris's wife Vida Chen sent an email to Norwegian Air complaining about the cancellation of Flight DY 7075. Ms. Chen claimed, in part, that Norwegian Air should refund the difference between the total sum that had been paid for two premium seats on Flight DY 7075 ($1,034.96) and what the charge would have been for two economy seats on that flight ($686.64).

70.   Plaintiff Andris and his wife thus asked Norwegian Air to refund the $348.32 they paid for premium service that Norwegian Air did not provide. Norwegian Air has refused to pay this refund.

**CLASS ALLEGATIONS; THE EC 261 CLASS**

71.   Plaintiffs bring this action as a class action pursuant to the Federal Rules of Civil Procedure, Rule 23(a) and Rule 23(b)(3).

72.   Plaintiffs Mazzini and Pawlak seek to represent a class (the "EC 261 Class") that consists of all passengers flying (or scheduled to fly) on Norwegian Air flights from California to the European Airports, or from the European Airports to California, at any time between March 14, 2015 and the date that a class is certified in this action; where,

a.   The passenger had a confirmed reservation on a Norwegian Air flight;

1           b.      The passenger or the person purchasing the ticket for the passenger

2  resided in California at the time the ticket was purchased;

3           c.      The flight was cancelled or delayed for at least three hours, for a reason

4  other than extraordinary circumstances;

5           d.      The passenger was informed of the delay or cancellation less than seven

6  days before the scheduled time of departure and was not offered rerouting, allowing them to

7  depart no more than one hour before the scheduled time of departure and to reach their final

8  destination less than two hours after the scheduled time of arrival; and

9           e.      Norwegian Air has not paid the passenger compensation in accordance

10  with Regulation (EC) 261/2004, as incorporated into Norwegian Air's contracts, or has failed

11  to pay the passenger all amounts due.

12      73.      Specifically excluded from the EC 261 Class are the officers, directors,

13  employees, and agents of Norwegian Air; any attorney representing Norwegian Air or plaintiffs

14  in this action; and any judge or other judicial officer presiding over this action, as well as the

15  staff and immediate family of any such judge or judicial officer. Passengers also will be

16  excluded from the EC 261 Class if neither the passenger nor the person purchasing the ticket

17  for the passenger provided any indicia of California residency to Norwegian Air at the time the

18  ticket was purchased.

19      74.      Plaintiffs Mazzini and Pawlak and all members of the EC 261 Class ("EC 261

20  Class Members") are similarly situated.

21      75.      Norwegian Air, pursuant to the terms its own contracts, and pursuant to

22  Regulation (EC) 261/2004 as incorporated into those contracts, was obligated to provide an

23  Article 14 Notice to each EC 261 Class Member at the time that his or her flight was cancelled

24  or delayed.  Norwegian Air has a common practice of not emailing Article 14 Notices to

25  passengers on delayed or cancelled flights.  Norwegian Air has a common practice of not

26  otherwise providing Article 14 Notices to passengers at the time that their flights are delayed or

27  cancelled.  With respect to each EC 261 Class Member, Norwegian Air failed to provide an

28  Article 14 Notice.

CLASS ACTION COMPLAINT

76.     Norwegian Air, pursuant to the terms of its contracts, and pursuant to EC 261 as incorporated into those contracts, was obligated to pay each EC 261 Class Member compensation for delayed or cancelled flights.  With respect to each EC 261 Class Member, Norwegian Air failed to make these payments.

77.     Certification of the EC 261 Class is proper under Federal Rule of Civil Procedure 23(a) because, as more fully stated below, the class is so numerous that joinder of all members is impracticable; the claims of the representative plaintiffs are typical of the claims of the class; the representative plaintiffs will fairly and adequately protect the interests of the class; and there are questions of law or fact common to the class. In addition, certification of the EC 261 Class is proper under Federal Rule of Civil Procedure Rule 23(b)(3) because, as more fully stated below, questions of law or fact common to all members of the class predominate over any questions affecting only individual members of the class; and a class action is superior to other available methods for fairly and efficiently adjudicating the claims at issue.

78.     *Numerosity*.  The members of the EC 261 Class are so numerous that joinder of all EC 261 Class Members is impracticable.  While the exact number of EC 261 Class Members is unknown to plaintiffs at this time, the number and identities of members of the class can easily be determined from the records of Norwegian Air.  Plaintiffs are informed and believe and based thereon allege that there are many hundreds of persons in the EC 261 Class.

79.     *Typicality*.  The proposed representatives of the EC 261 Class are members of the class and their claims are typical of the claims of the EC 261 Class Members.   The proposed representatives of the EC 261 Class and unnamed members of the class have all been similarly affected by Norwegian Air's breach of contract; by its failure to provide Article 14 Notices; and by its failure to provide EC 261 compensation for cancelled and delayed flights.

80.     *Adequacy*.  Plaintiffs Mazzini and Pawlak are ready and able to fairly and adequately protect the interests of the EC 261 Class Members.  Plaintiffs have retained counsel who have the skill and experience to effectively prosecute this action on behalf of the class.

CLASS ACTION COMPLAINT

81.    *Common Questions*.  Common questions of law and fact exist as to all EC 261 Class Members. These common questions include, but are not limited to, the following.

a.    Whether Norwegian Air incorporated Regulation (EC) 261/2004 into its contracts with the members of the EC 261 Class.

b.    Whether Regulation (EC) 261/2004, as incorporated into Norwegian Air's contracts, must be interpreted as meaning that passengers whose flights are cancelled are entitled to compensation under Article 7 of EC 261.

c.    Whether Norwegian Air voluntarily undertook to, or otherwise contractually obligated itself to, provide such compensation to EC 261 Class Members whose flights are cancelled.

d.    Whether Regulation (EC) 261/2004, as incorporated into Norwegian Air's contracts, must be interpreted as meaning that passengers whose flights are delayed for more than three hours are entitled to compensation under Article 7 of EC 261.

e.    Whether Norwegian Air voluntarily undertook to, or otherwise contractually obligated itself to, provide such compensation to EC 261 Class Members whose flights are delayed for more than three hours.

f.    Whether Regulation (EC) 261/2004, as incorporated into Norwegian Air's contracts, must be interpreted as requiring Norwegian Air to provide to each passenger at the time his or her flight is cancelled or delayed a written notice explaining the passenger's rights and setting out the rules for the care and compensation due under EC 261.

g.    Whether Norwegian Air voluntarily undertook, or otherwise contractually obligated itself, to provide Article 14 Notices to the EC 261 Class Members.

82.    *Predominance*.  These common questions predominate over any questions that affect only individual members of the EC 261 Class.  This is so, in part, because as incorporated into Norwegian Air's contracts, Regulation (EC) 261/2004 "seeks to redress damage in an immediate and standardized manner." *Sturgeon* at ¶51.  Further, Article 7 of EC 261, as incorporated into Norwegian Air's contacts, "enables a loss of time suffered by

CLASS ACTION COMPLAINT

passengers to be redressed without their having to prove that they have sustained individual damage." *Nelson* at ¶74.

83.    *Superiority*.  A class action is superior to other available means for the fair and efficient adjudication of this controversy because joinder of all members of the EC 261 Class is impractical; and class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual EC 261 Class Member are relatively small, the expense of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them.  Such individual litigation also would impose unnecessary burdens on the court system; and would present the potential for inconsistent or contradictory judgments.  There will be no difficulty in the management of claims relating to the EC 261 Class as a class action.

**CLASS ALLEGATIONS; THE REFUND CLASS**

84.    At all relevant times Norwegian Air has given California Passengers the option of paying extra for "premium" service; has sold premium fare tickets, which cost more than economy fare tickets; and has allowed passengers with economy fare tickets to upgrade to premium class for an extra charge.

85.    At all relevant times Norwegian Air has promised that passengers paying extra for premium service will receive seating in a premium cabin; more comfortable seating, including extra leg room; and other amenities, such a three-course dinner, complimentary drinks, and a "state-of-the-art touch screen entertainment system."

86.    When Norwegian Air cancels a flight, it sometimes will put the passengers on a different airplane that does not include a premium cabin or on which premium service is not otherwise available.

87.    Plaintiff Andris seeks to represent a class (the "Refund Class") that consists of all passengers flying (or scheduled to fly) on Norwegian Air flights from  California to the

CLASS ACTION COMPLAINT

European Airports, or from the European Airports to California, at any time between March 14, 2015 and the date that a class is certified in this action; where,

    a.    The passenger had a confirmed reservation on a Norwegian Air flight;

    b.    The passenger or the person purchasing the ticket for the passenger resided in California at the time the ticket was purchased;

    c.    The passenger or the person purchasing the ticket for the passenger had paid for premium service on the flight;

    d.    The flight was cancelled;

    e.    Norwegian Air then transported the passenger on an airplane that did not provide the premium service – including premium cabin, seating, and amenities – that the passenger would have received on the original, cancelled flight; and

    f.    Norwegian Air has not refunded to the passenger or the person purchasing the ticket for the passenger all charges imposed for premium service.

88.    Specifically excluded from the EC 261 Class are the officers, directors, employees and agents of Norwegian Air; any attorney representing Norwegian Air or plaintiffs in this action; and any judge or other judicial officer presiding over this action, as well as the staff and immediate family of any such judge or judicial officer. Passengers also will be excluded from the EC 261 Class if neither the passenger nor the person purchasing the ticket for the passenger provided any indicia of California residency to Norwegian Air at the time the ticket was purchased.

89.    Plaintiff Andris and all members of the Refund Class ("Refund Class Members") are similarly situated.

90.    Norwegian Air's premium service is an optional service. Passengers flying on certain Norwegian Air flights have the option of buying economy-class tickets or paying extra for upgraded premium service.

91.    Each member of the Refund Class paid extra to for Norwegian Air's premium service; and was denied that service as the result of a flight cancellation.

CLASS ACTION COMPLAINT

92.     Norwegian Air, pursuant to the terms of its own contracts, was obligated to refund all charges imposed for premium service when that service was not provided as a result of a flight cancellation.  Norwegian Air has a common practice of not paying such refunds. With respect to Plaintiff Andris and each other Refund Class Member, Norwegian Air has failed to pay the refunds due.

93.     Certification of the Refund Class is proper under Federal Rule of Civil Procedure 23(a) because, as more fully stated below, the class is so numerous that joinder of all members is impracticable; the claims of the representative plaintiffs are typical of the claims of the class; the representative plaintiffs will fairly and adequately protect the interests of the class; and there are questions of law or fact common to the class. In addition, certification of the EC 261 Class is proper under Federal Rule of Civil Procedure Rule 23(b)(3) because, as more fully stated below, questions of law or fact common to all members of the class predominate over any questions affecting only individual members of the class; and a class action is superior to other available methods for fairly and efficiently adjudicating the claims at issue.

94.     *Numerosity*.  The members of the Refund Class are so numerous that joinder of all Refund Class Members is impracticable.  While the exact number of Refund Class Members is unknown to plaintiffs at this time, the number and identities of members of the class can easily be determined from the records of Norwegian Air.  Plaintiffs are informed and believe and based thereon allege that there are hundreds of persons in the Refund Class.

95.     *Typicality*.  The proposed representative of the Refund Class is a member of the class and his claims are typical of the claims of the Refund Class Members.   The proposed representative of the Refund Class and unnamed members of the class have all been similarly affected by Norwegian Air's breach of contract; and by its failure to pay refunds for premium service not provided as a result of flight cancellations.

96.     *Adequacy*.  Plaintiff Andris is ready and able to fairly and adequately protect the interests of the Refund Class Members.  Plaintiff has retained counsel who have the skill and experience to effectively prosecute this action on behalf of the class.

CLASS ACTION COMPLAINT

97.     *Common Questions*.  Common questions of law and fact exist as to all Refund Class Members. These common questions include, but are not limited to, whether Norwegian Air's contracts require it to refund all charges imposed for premium service when that service is not provided as a result of a flight cancellation; and whether Norwegian Air has a common practice of not paying such refunds.

98.     *Predominance*.  These common questions predominate over any questions that affect only individual members of the Refund Class.  This is so, in part, because common questions relating to the meaning and effect of Norwegian Air's contracts common to all members of the Refund Class are central to any claim for breach of contact damages by any member of the Refund Class.

99.     *Superiority*.  A class action is superior to other available means for the fair and efficient adjudication of this controversy because joinder of all members of the Refund Class is impractical; and class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual Refund Class Member are relatively small, the expense of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them.  Such individual litigation also would impose unnecessary burdens on the court system; and would present the potential for inconsistent or contradictory judgments.  There will be no difficulty in the management of claims relating to the Refund Class as a class action

CLASS ACTION COMPLAINT

### FIRST CAUSE OF ACTION

**For Breach of Contact Damages; Brought on Behalf of the EC 261 Class**

100.    Plaintiffs reallege and incorporate all of the preceding paragraphs as though fully set forth in this cause of action.

101.    With respect to each EC 261 Class Member, Norwegian Air entered into a contract that incorporated Regulation (EC) 261/2004 and, by its terms, obligated Norwegian Air to provide compensation for delayed or cancelled Norwegian Air flights in accordance with EC 261.

102.    Each such contract was supported by the sums paid to Norwegian Air as the purchase price for the EC 261 Class Member's ticket and/or by other consideration.

103.    Each EC 261 Class Member has performed any duties imposed on him or her by any Norwegian Air contract, or has been excused from performing such duties.

104.    With respect to each EC 261 Class Member, Norwegian Air has committed a breach of contract by failing to pay the Class Member compensation due under Regulation (EC) 261/2004 as incorporated into Norwegian Air's contracts.

105.    Each EC 261 Class Member has been denied a payment to which he or she was entitled and has been damaged by Norwegian Air's breach of contact.

106.    Plaintiffs on behalf of themselves and all EC 261 Class Members seek recovery for Norwegian Air's breach of its own, self-imposed undertakings; and pray for relief as set forth below.

### SECOND CAUSE OF ACTION

**For Specific Performance; Brought on Behalf of the EC 261 Class**

107.    Plaintiffs reallege and incorporate all of the preceding paragraphs as though fully set forth in this cause of action.

108.    With respect to each EC 261 Class Member, Norwegian Air entered into a contract that incorporated Regulation (EC) 261/2004 and, by its terms, obligated Norwegian Air to provide to all EC 261 Class Members at the time that their flights were cancelled or delayed written Article 14 Notices setting out their rights and the rules for all compensation and

CLASS ACTION COMPLAINT

assistance to which they were entitled under Regulation (EC) 261/2004 as incorporated into Norwegian Air's contracts.

109.   Each such contract was supported by the sums paid to Norwegian Air as the purchase price for the EC 261 Class Member's ticket and/or by other consideration.

110.   Each EC 261 Class Member has performed any duties imposed on him or her by any Norwegian Air contract, or has been excused from performing such duties.

111.   With respect to each EC 261 Class Member, Norwegian Air has committed a breach of contract by failing to provide an Article 14 Notice to the EC 261 Class Member at or after the time the flight was cancelled or delayed.

112.   Plaintiffs on behalf of themselves and all EC 261 Class Members seek an order of specific performance sufficient to remedy Norwegian Air's breach of its own, self-imposed undertakings; and pray for relief as set forth below.

## THIRD CAUSE OF ACTION

### For Breach of Contact Damages; Brought on Behalf of the Refund Class

113.   Plaintiffs reallege and incorporate all of the preceding paragraphs as though fully set forth in this cause of action.

114.   With respect to each Refund Class Member, Norwegian Air entered into a contract that, by its terms, obligated Norwegian Air to refund all charges imposed for premium service when that service was not provided as a result of a flight cancellation.

115.   Each such contract was supported by the sums paid to Norwegian Air as the purchase price for the Refund Class Member's ticket and/or by other consideration.

116.   Each Refund Class Member has performed any duties imposed on him or her by any Norwegian Air contract, or has been excused from performing such duties.

117.   With respect to each Refund Class Member, Norwegian Air has committed a breach of contract by failing to refund all charges imposed for premium service when that service was not provided as a result of a flight cancellation.

118.   Each Refund Class Member has been denied a payment to which he or she was entitled and has been damaged by Norwegian Air's breach of contact.

119.    Plaintiffs on behalf of themselves and all Refund Class Members seek recovery for Norwegian Air's breach of its own, self-imposed undertakings; and pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief as follows.

On the First and Second Causes of Action:

1.    For an order determining that this action may be maintained as a class action, certifying the EC 261 Class, appointing Plaintiff Mazzini and Plaintiff Pawlak as representatives of the EC 261 Class, and appointing plaintiffs' counsel as counsel for the class;

2.    For damages according to proof, together with prejudgment and post-judgment interest as allowed by law; and

3.    In the event that damages are unavailable or inadequate to provide complete relief, for an order of specific performance requiring Norwegian Air (a) to send all members of the EC 261 Class a written notice explaining their rights under EC 261 as incorporated into Norwegian Air's contracts, and explaining the process for claiming EC 261 compensation for delayed or cancelled flights from Norwegian Air; and (b) to pay all claims for EC 261 compensation that members of the EC 261 Class submit after receipt of this notice.

On the Third Cause of Action:

1.    For an order determining that this action may be maintained as a class action, certifying the Refund Class, appointing Plaintiff Andris as the representative of the Refund Class, and appointing plaintiffs' counsel as counsel for the class;

2.    For damages according to proof; and

3.    For prejudgment and post-judgment interest as allowed by law.

 On All Causes of Action:

1.    For attorneys' fees pursuant to California Code of Civil Procedure §1021.5, or as otherwise requested by plaintiffs and/or their counsel and allowed by law;

2.    For litigation expenses and costs of suit; and

CLASS ACTION COMPLAINT

1          3.      For all other relief which the Court shall deem just and equitable.

2

3    Dated:  March 13, 2018                    /s/ Gordon W. Renneisen

4                                                Gordon W. Renneisen
                                            CORNERSTONE LAW GROUP

5                                                Attorneys for Plaintiffs and all others
                                          similarly situated

6

7

8                          **JURY DEMAND**

9          Plaintiffs demand trial by jury.

10

11   Dated:  March 13, 2018                    /s/ Gordon W. Renneisen

12                                                 Gordon W. Renneisen
                                            CORNERSTONE LAW GROUP

13                                               Attorneys for Plaintiffs and all others
                                          similarly situated

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

CLASS ACTION COMPLAINT